**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **THE OFFICIAL STANFORD INVESTORS COMMITTEE,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | **Case No. 3:11-CV-00298-N-BL** |
| **CORT & CORT and CORT & ASSOCIATES,** | § § § | |
| Defendants. | § § § | |

**CORT & CORT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Cort & Cort and Cort & Associates (collectively, "Cort & Cort") file this Reply in Support of its Motion to Dismiss for Lack of Personal Jurisdiction, and would show the Court as follows:

**I.**

**INTRODUCTION**

In its Response, the Official Stanford Investors Committee (the "Committee") asks the Court to find specific[1] personal jurisdiction over Cort & Cort, an Antiguan-based law firm that has never performed work in the United States. Cort & Cort performed legal work for certain Stanford entities pursuant to a retainer agreement that limited the scope of the firm's work to "the State of Antigua and Barbuda and also in the other English Speaking Caribbean territories."[2]

The Committee argues that the Court should exercise jurisdiction simply because Cort & Cort contracted with a Texas entity and kept in touch via email and phone calls. In support of its

---

[1] By pleading specific jurisdiction only, the Committee apparently acknowledges that Cort & Cort's contacts with the State of Texas are not sufficiently "substantial, continuous, [or] systematic" to support general jurisdiction in this case. *See* Response [Doc. 58] p.12.

[2] Appendix to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction ("Appx") [Doc. 12] at A19.

arguments, the Committee selectively cites portions of cases that, when read in their entirety, demonstrate the lack of jurisdiction in this case. More applicable cases—including cases that involve foreign law firms doing business for American companies—support Cort & Cort's position that the Court lacks jurisdiction.

Cort & Cort has not established "minimum contacts" in Texas sufficient to support the exercise of jurisdiction—which is "[t]he constitutional touchstone" of the jurisdiction analysis.[3] Consequently, the Court should dismiss this case for lack of personal jurisdiction.

## II.
### FACTUAL BACKGROUND

Cort & Cort is a law firm based in the nation of Antigua and Barbuda.[4] Cort & Cort's practice is limited to providing services and counsel under Antiguan law.[5] It has never practiced law outside of Antigua and the other English-speaking Caribbean territories.[6] Cort & Cort represented select Stanford entities in Antigua pursuant to a retainer agreement dated May of 2006.[7]

In its Response, the Committee quotes extensively from the retainer agreement, but omits the two paragraphs that specifically limit Cort & Cort's representation to areas outside of the United States. Both in the recitals and the first numbered paragraph, the agreement states that Cort & Cort shall perform its services only "in the State of Antigua and Barbuda and also in the other English Speaking Caribbean territories."[8]

---

[3] *Up North Plastics, Inc. v. Miller-St. Nazianz, Inc.*, No. 3:04-cv-2032-N, 2005 WL 106480 at *2 (N.D. Tex. Jan. 8, 2005) (Godbey, J.) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985)).

[4] Appx [Doc. 12] at A4 ¶ 8.

[5] *Id.*

[6] *Id.*

[7] *Id.* at A5 ¶ 9. Contrary to the Committee's assertions, Dr. Errol Cort did not practice law with Cort & Associates or Cort & Cort after March of 2004. Appx [Doc. 12] at A4 ¶ 5–7.

[8] *Id.* at A19.

In her affidavit filed on behalf of Cort & Cort, Sharon Cort-Thibou detailed the scope of Cort & Cort's practice.[9] She confirms contacts with the Stanford entities via telephone, email, and letter.[10] But, she notes that no one from Cort & Cort has ever traveled to the United States for work-related reasons, nor did the firm advise any clients on United States law or represent any client in the United States in any way.[11] In fact, the declaration and exhibits filed by the Committee corroborate Ms. Cort-Thibou's testimony.[12] Those exhibits reflect a limited legal relationship based entirely on work performed in Antigua and Barbuda.

Contrary to the Committee's assertion, this Court has not found personal jurisdiction in similar cases. In fact, of the four of this Court's opinions that the Committee cites in its Response,[13] two of them do not discuss personal jurisdiction at all. The remaining two opinions found jurisdiction existed over a Texas resident[14] and a Florida university[15] because the Court found minimum contacts *with the United States*. In this case, Cort & Cort is a foreign entity with no minimal contacts with either Texas or the United States.

## III.
### ARGUMENTS & AUTHORITIES

The Committee argues that jurisdiction exists because of phone calls and emails and because Cort & Cort "reached out" to contract with a Texas entity. **Part III.A** of this brief will show that phone calls and emails do not constitute minimum contacts where the alleged tort did not arise from the communications. In addition, Cort & Cort's retainer contract with Stanford Financial Group

---

[9] *Id.* at A3–A7.

[10] *Id.* at A6–A7 ¶ 18.

[11] *Id.*

[12] [Doc. 59].

[13] Response [Doc. 58] p.2.

[14] *Janvey v. Alguire*, 846 F. Supp. 2d 662, 673 (N.D. Tex. 2011).

[15] *Janvey v. The University of Miami*, No. 3:11-cv-0041-N (N.D. Tex. Jul. 11, 2013) [Doc. 44].

("Stanford Financial") does not weigh in favor of jurisdiction, since Stanford Financial's choice of location is a "fortuitous circumstance resulting from the unilateral activity" of Stanford Financial.[16] **Part III.B** presents analogous authorities that confirm the lack of personal jurisdiction in this case.

### A.    Phone Calls and Emails Are Irrelevant to the Jurisdictional Analysis Unless the Communications "Gave Rise" to the Alleged Tort.

The Committee cites four cases in support of its argument that phone calls and emails "can serve as the basis for exercising personal jurisdiction over a defendant in Texas."[17] However, in each of the cases cited by the Committee, the defendants' contact with the forum state either gave rise to the alleged tort or constituted "the very essence of the tort."[18] For example, *Long v. Grafton*[19] involved allegations that the defendant interfered with the plaintiff's efforts to obtain employment in Texas by making phone calls to Texas. In that case, the calls were relevant to the analysis only because "[t]he actual content of these communications gave rise to Long's intentional tort causes of action."[20]

The other cases cited by the Committee involve similar facts. In *Brown v. Flowers*,[21] the telephone call that weighed in favor of jurisdiction "was alleged to constitute a tort committed 'in whole or in part'" in the forum state.[22] *Denmark v. Tzimas*[23] involved defamation and tortious interference claims that arose directly from the defendant's communications. The court wrote that "[i]f the cause of action arises out of, or is directly related to, the defendant's purposeful contact

---

[16] *Up North Plastics, Inc.*, 2005 WL 106480 at *4.

[17] Response [Doc. 58] p.10–11.

[18] *Ramm v. Rowland*, 658 F. Supp. 705, 709 (S.D. Tex. 1987).

[19] *Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085 (N.D. Tex. 2003) (Godbey, J.).

[20] *Id.* at 1090.

[21] *Brown v. Flowers Indus.*, 688 F.2d 328 (5th Cir. 1982).

[22] *Id.* at 332.

[23] 871 F. Supp. 261 (E.D. La. 1994).

with the forum, the court may exercise 'specific jurisdiction.'"[24] *Ramm v. Roland*[25] also involves an intentional tort allegedly committed by telephone. In that case, Judge Hittner emphasized that the defendant's "alleged acts of intentionally contacting the Plaintiff's wife by phone to encourage her to leave her husband is the very essence of the tort."[26]

In this case, the Committee does not allege that Cort & Cort committed any tort in its communications. Rather, the Committee seeks payment of fees earned by Cort & Cort in exchange for legal services rendered in Antigua. In such cases—where the alleged tort did not arise from the communications, this Court has written that the communications are immaterial to the jurisdictional analysis:

> Finally, Miller did not subject itself to Texas jurisdiction by directing communications to Michael Ross. The Court has already determined that Up North is a Minnesota corporation with Minnesota headquarters and Minnesota operations. The requirement that parties wishing to deal with Up North on certain matters contact Michael Ross or others in Texas is a fortuitous circumstance resulting from the unilateral activity of Up North and those individuals. Accordingly, compliance with that requirement does not constitute purposeful availment. "Communications to Texas rest[ing] on nothing but the mere fortuity that [the recipient] happens to be a resident of the forum . . . [are] insufficient to support specific jurisdiction."[27]

Similarly, this Court has held that the Stanford entities operated worldwide, through a network of entities located in the United States and beyond.[28] Stanford's selection of Houston as its headquarters constitutes "unilateral activity" that does not weigh in favor of jurisdiction.

The Committee also argues that the Fifth Circuit case of *Central Freight Lines v. APA Transport*[29] supports jurisdiction in this case. Again, the Committee selectively reads the opinion to

---

[24] *Id.* at 265.

[25] 658 F. Supp. 705 (S.D. Tex. 1987).

[26] *Id.* at 708.

[27] *Up North Plastics, Inc. v. Miller-St. Nazianz, Inc.*, No. 3:04-cv-2032-N, 2005 WL 106480 at *4 (N.D. Tex. Jan. 8, 2005) (Godbey, J.) (citations removed; brackets in original).

[28] *Janvey v. Alguire*, No. 3:09-cv-724-N, 2013 WL 2451738 at *2 (N.D. Tex. Jan. 22, 2013) (Godbey, J.).

[29] *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.2d 376 (5th Cir. 2003).

imply that there exists some sort of "test" for jurisdiction. But the Fifth Circuit itself has said that jurisdiction may not be determined on "a mechanical and qualitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state."[30]

In *Central Freight*, the defendant did more than just "reach out" to a company that was headquartered in Texas. It contracted with the plaintiff to receive shipments directed from Texas and to acquire customers that were based in Texas—both with the effect of "causing business activity in the forum state."[31]

In this case, Cort & Cort's *only* contacts with Texas consisted of phone calls, letters, and emails.[32] The retainer agreement explicitly limited the scope of Cort & Cort's work to "the State of Antigua and Barbuda and also in the other English Speaking Caribbean territories."[33] It did not cause business activity in Texas and did not solicit customers in Texas.[34] Consequently, Cort & Cort has not established minimum contacts in Texas sufficient to support the exercise of jurisdiction.[35]

### B.  Analogous Authority, Including Authority From the Northern District of Texas, Confirms the Lack of Personal Jurisdiction.

In *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,[36] the plaintiff had hired the defendant, a law firm based in the Netherlands, to handle a corporate restructuring and financing transaction. After the transaction concluded, the plaintiff sued its former law firm in the United States, alleging legal malpractice and breach of fiduciary duties.

---

[30] *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

[31] *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d at 382 (citing *Miss. Interstate Express, Inc.*, 681 F.2d at 1007).

[32] Appx [Doc. 12] at A6 ¶ 15.

[33] *Id.* at A-19.

[34] *Id.* at A6–A7 ¶ 18–19

[35] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("when a lawyer chooses to represent a client in another forum, that in itself does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum.").

[36] 628 F. Supp. 2d 1 (D. D.C. 2009).

The law firm did not maintain offices in the United States and did not employ attorneys licensed in the United States. It did, however, represent American clients in foreign jurisdictions, and boasted of "many U.S. based clients."[37] During the course of its engagement with the plaintiff, the law firm sent invoices, draft and final work product, and demands for payment to the plaintiff's office in the United States. The law firm also contracted with a domestic collection firm to dun plaintiff upon conclusion of their engagement.[38] The plaintiff made many of the same arguments presented herein by the Committee—that the contracting for legal services or the communications between lawyer and client constituted minimum contacts sufficient to support jurisdiction.[39] The court disagreed.[40]

Neither the law firm's retention contract nor its frequent communications with the plaintiff constituted a "substantial connection" with the forum.[41] "Where the contract was 'neither made nor performed in [the forum], and no services were provided or to be provided here,' the contract does not justify the exercise of jurisdiction over the non-resident defendant."[42] The court noted that this conclusion is consistent with rulings from "several circuits, as well as many district courts," which have held that "an attorney-client relationship does not subject a non-resident attorney or law firm to personal jurisdiction in its client's home forum where legal services were rendered outside of the client's home forum."[43]

---

[37] *Id.* at 4.

[38] *Id.* at 5.

[39] *Id.* at 7.

[40] *Id.* (the district court came to its conclusion by analyzing authority from a number of jurisdictions, including the Fifth Circuit, and in the context of a District of Columbia statute that—like the Texas long-arm statute—is "coextensive with the Due Process Clause"). *Id.* at 8.

[41] *Id.* at 7.

[42] *Id.* at 7–8 (citing, among others, *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986)).

[43] *Id.* at 8.

Similar cases include *Austad Company v. Pennie & Edmonds*,[44] in which the Eighth Circuit determined that no jurisdiction existed where a New York law firm issued phone calls, mailings, courier deliveries, and even a three-day visit to the forum by an attorney and a law clerk.[45] The First Circuit agreed, writing that "[t]he mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state; more is required."[46]

The Northern District of Texas considered similar facts in *Taylor v. Underwood*, a legal malpractice suit brought by a Texas resident against his former lawyers, located in West Virginia.[47] Judge Kendall wrote that neither general nor specific jurisdiction existed, dismissing the very arguments brought by the Committee in this case:

> Defendants' conduct does not confer specific jurisdiction. They never visited the Plaintiff in Texas, never came to Texas at all, and remained in West Virginia at all times of the contract's performance. Phone calls and correspondence do not change the result.
>
> Plaintiff asserts that the Defendants knew he lived in Texas and that there was nothing "fortuitous" about their contacts with him there. If this argument were valid, any lawyer contracting to do business with anyone in another state would be subject to court action in the forum state chosen by the Plaintiff. One can imagine lawyers refusing to conduct business out of state for fear of being hauled into court in a foreign jurisdiction by any disgruntled client. Additionally, in order for a Texas resident to get representation in another state, that resident would be required to foot the travel, room, board, and office space for his Texas attorneys in order to get out of state representation. Plaintiff's argument, although creative, without more is not sufficient to support jurisdiction. Incidental contacts, such as there are here, with the forum state do not confer jurisdiction.[48]

---

[44] 823 F.2d 223 (8th Cir. 1987).

[45] *Id.* at 224–26.

[46] *Sawtelle v. Farrell*, 70 F.3d 1381, 1392 (1st Cir. 1995). *Accord, Porter v. Berall*, 293 F.3d 1073, 1075–77 (8th. Cir. 2002) (affirming dismissal of legal malpractice action for lack of personal jurisdiction); *Mayes v. Leipziger*, 674 F.2d 178, 185 (2d Cir. 1982) (no personal jurisdiction in New York over a foreign law firm representing a New York client in a foreign litigation); *We're Talking Mardi Gras, LLC v. Davis*, 192 F. Supp. 2d 635, 640 (E.D. La. 2002) (no personal jurisdiction in legal malpractice action against foreign attorney, whose communications "would have been the same regardless of where [the client] lived").

[47] No. 3:99-cv-2632-X, 2000 WL 123973 (N.D. Tex. Jan. 31, 2000) (Kendall, J.).

[48] *Id.* at *4.

Analogous authority—including authority from this very Court—demonstrates that Cort & Cort's contacts with Texas are insufficient for either general or specific personal jurisdiction.

## IV.
### CONCLUSION & PRAYER

For these reasons, and those presented in Cort & Cort's Motion to Dismiss for Lack of Personal Jurisdiction, Defendants Cort & Cort and Cort & Associates ask that the Court dismiss the Complaint for lack of personal jurisdiction and for such other and further relief to which Defendants may be entitled.

Respectfully Submitted,

**KANE RUSSELL COLEMAN & LOGAN PC**

By: s/ David M. Clem
     **Kenneth C. Johnston**
     State Bar No. 00792608
     **David M. Clem**
     State Bar No. 24050428

3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone: (214) 777-7200
Facsimile:  (214) 777-4299

***Attorneys for Defendants,***
***Cort & Cort and Cort & Associates***

### Certificate of Service

On December 26, 2013, I served a true and correct copy of the foregoing Reply on all parties of record through the Court's ECF filing system.

By: s/ David M. Clem
     **David M. Clem**